**D. F. ANTONELLI, Jr., et al., Plaintiffs,**

v.

**SENATE REALTY CORPORATION, Defendant.**

**Civ. A. No. 3988–62.**

United States District Court
District of Columbia.

Nov. 5, 1963.

John J. Sexton, John J. Yurow, Washington, D. C., for plaintiffs.

Ralph F. Berlow, Washington, D. C., for defendant.

TAMM, District Judge.

The present action, seeking for plaintiffs' purchasers specific performance of a contract to sell real property or for damages for breach of that contract, is predicated upon what purports to be a sales contract dated May 31, 1962 and admitted in evidence as plaintiffs' exhibit #1. The contract provides that the total price of the property is to be $140,000, the purchasers agreeing to pay $35,000 cash at the date of conveyance, the purchasers to place a first deed of trust secured on the premises of "Best Obtainable," and the "balance of deferred purchase money of $78,000 to be secured by a second deed of trust on said property, etc." At the time of settlement, it developed that the purchasers had obtained a commitment for a first trust upon the property in the amount of $80,000, and the seller declined to complete the transaction. The seller, defendant in the present action, contends that the sale contract did not contemplate a first trust in excess of $62,000 and that the plaintiffs' action in obtaining a commitment for a first deed of trust in the amount of $80,000 thereby diminished the value of his second trust to the point where the transaction became financially unattractive to him. It is to be noted from this factual situation that with the $80,000 first trust commitment the purchasers would pocket $18,000 and obtain possession of the property by paying the remaining $62,000 arising from the first trust and by execution of the $78,000 second trust note. There was an unpaid balance on an existing trust which with settlement charges would reduce the cash received by the plaintiff to approximately the $35,000 cash required by the contract.

The basic question confronting the Court in this case is whether the so-called sales contract of May 31, 1962 constituted a valid and legally enforceable contract between the parties. On its surface the contract appears to be a legal one, but the question arises as to the interpretation of the words, "Best Obtainable," when used to define the size of a first trust in a real estate contract in which the purchase price and other terms affecting the amount of the first trust are specifically spelled out. More concisely stated, the question is specifi-

cally whether the agreed upon total price of the property together with a specific provision as to the amount of the cash payment and the size of the second trust note limits the size of the "Best Obtainable" first deed of trust. The Court has been unable to find a case specifically treating this question. Ordinarily in real estate transactions the utilization of the "Best Obtainable" phraseology is designed to enable the purchaser to obtain the highest possible loan to be used as the down payment at settlement for the property. Normally, the size of the second trust is determined after the details of the first trust commitment have been made so specific as to permit a mathematical determination of the size of the first and second trusts. In the present case, however, the size of the second trust is specifically determined, enumerated and agreed upon by the parties; without at that time apparent information as to monetary value of the potential first trust. Under these circumstances, the Court must determine whether the purchasers are subject to any limitation as to the size of the "Best Obtainable" first trust, or whether they may without regard to the total purchase price of the property obtain the highest available first trust loan.

■ This Court is of the opinion that law, equity and justice require the conclusion that the total amount of the first trust cannot be in any amount which when added to the second or any other junior trust and cash payments exceeds the total contractual purchase price of the property. To hold otherwise would permit the purchasers to so diminish the actual dollar value of a second trust as to completely defeat the terms of a sales contract. The Court concludes, therefore, that assuming that the plaintiffs' exhibit #1, the so-called sales contract, was in fact a valid contract, the purchasers did not comply with the terms of the contract when they obtained the first trust commitment for $80,000 and that their failure to so comply constituted a breach of contract. The obvious result is, of course, that the seller's po-

tential purchasers not having complied with the terms of the contract may not have specific performance or damages for breach of the contract which they, in fact, initially breached.

■ While the above conclusion would appear to be dispositive of the legal issues in this case, the Court believes that a finding in favor of the defendant must also be reached by an alternate method. The use of the phrase, "Best Obtainable," in referring to the placing of a first deed of trust is an ambiguity in the contract when it appears sandwiched between the total purchase price, the cash payable at the date of conveyance and the provisions for the second trust in a specific amount. Obviously, the ambiguity might be, and undoubtedly was, interpreted in one manner by the purchasers and in an entirely different manner by the seller. The significance of the words, "Best Obtainable," was obviously different to the purchaser than it was to the seller. The Court believes that this inherent ambiguity in the contract created a situation where there was, in fact, no meeting of the minds of the parties to the terms of the contract, and upon this basis the Court is of the opinion that the contract is void and unenforceable.

■ Another aspect of this case which would appear to require comment is whether the trust note dated December 20, 1962 in the amount of $78,000 and admitted in evidence as plaintiffs' exhibit #4 is void because of interlineation and uncertainty. The interlineations drawn through this exhibit, the hand-printed additions, together with the generous but undecipherable initialling of various aspects of the note make it, in this Court's opinion, an invalid document. In spite of the initialling, the face of the note is so interlineated as to permit subsequent alterations of the note which would be non-identifiable with the alterations already existing. The Court does not feel that any seller or financial institution would be legally bound to accept such a trust note. Again, the tender of this invalid note indicates a noncompliance with the terms of the contract, if

the contract is considered to be a valid one.

The Court must make similar observations relative to the plaintiffs' exhibit #3, identified as the deed of trust dated December 20. Certainly this document on its face has been so altered by interlineation and hand-printed additions as to make it legally obnoxious and unacceptable.

The Court concludes for the several reasons stated above that the plaintiffs have not maintained their burden of proof in this case, and the Court finds for the defendant both upon the issue of specific performance and upon the issue of damages.

Counsel will submit findings of fact, conclusions of law, and order to conform with the above ruling.